# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

DANIEL B. BRAGG,

                Petitioner,      :      Case No. 2:18-cv-762

    - vs -                        District Judge Algenon L. Marbley
                                       Magistrate Judge Michael R. Merz

CHARLES BRADLEY, Warden,
  Pickaway Correctional Institution

                                  :

                Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Daniel Bragg to obtain relief from his conviction in the Licking County Court of Common Pleas on one count of rape of a minor under the age of thirteen. Upon conviction, Petitioner was sentenced to be imprisoned for ten years to life and is serving that sentence in Respondent's custody.

Although this case was filed at Columbus, the Magistrate Judge reference in the case has been transferred to the undersigned to help balance the magistrate judge workload in the District.

The case is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases which provides:

> The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it, If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

**Procedural History**

After trial by a jury, Petitioner was convicted on October 20, 2016, of one count of rape of a minor under thirteen (Petition, ECF No. 1, PageID 1[1], ¶¶ 2(a), 5). He appealed to the Ohio Court of Appeals for the Fifth District which affirmed the conviction. *State v. Bragg*, 5th Dist. Licking Case No. 16-CA-95, 2017-Ohio-5726 (Jul. 3, 2017), *appellate jurisdiction declined*, 151 Ohio St. 3d 1457, 2017-Ohio-8842 (2017). Having unsuccessfully sought review by the Ohio Supreme Court, Mr. Bragg filed his Petition in this Court on August 6, 2018.

Petitioner pleads the following grounds for relief:

> **Ground One:** The Defendant-Appellant was denied the effective assistant [sic] of counsel.
>
> **Supporting Facts:** Counsel failed to object to hearsay testimony when counsel failed to objects to leading questions during direct examination.
>
> **Ground Two:** The Defendant was denied the effective assistant [sic] of counsel.
>
> **Supporting Facts:** Counsel failed to object to testimony from Kelly Morrison that exceeded the scope of her knowledge and expertise and it was unfairly prejudicial.
>
> **Ground Three:** Counsel failed to object to leading questions during examination, and therefore [Petitioner] was denied effective assistant [sic] of counsel.
>
> **Supporting Facts:** Evidence Rule 611(C) provides that leading questions should not be used in direct examination of a witness except as necessary to develop his testimony.

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.

**Ground Four**: The cumulative effect of trial counsel's errors prejudiced the Defendant-Appellant and deprived him of his Constitutional Rights to a fair trial.

**Supporting Facts:** The failure of trial counsel to object to testimony and the failure of the trial court to make a fair decision to not allow testimony not based on supported evidences [sic] prejudiced the defendant to his right to a fair trial.

(Petition, ECF No. 1, Page ID 5-10).

**Analysis**

**Ground One: Ineffective Assistance of Trial Counsel: Failure to Object to Hearsay**

In his First Ground for Relief, Petitioner asserts he suffered ineffective assistance of trial counsel when his trial attorney did not object to the admission of hearsay testimony elicited from a Joseph Blue. This was Bragg's First Assignment of Error on direct appeal and the Fifth District decided it as follows:

> **1. Failure to object to hearsay.**
>
> {¶ 14} Bragg argues that his trial counsel was ineffective because he failed to object to hearsay statements. He points to two statements made by Joseph Blue during his testimony. Specifically the first statement, "[m]y ex-wife catching Dan kissing my daughter on the lips" and the second statement[,] "I found my daughter and my ex-wife in my driveway and being told that my daughter has been sexually assaulted by Dan Bragg."
>
> {¶ 15} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), quoting *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988). *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d

864, ¶ 233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

{¶ 16} As to the first statement, Bragg admitted kissing the victim when interviewed by Detective Collins. Therefore, any error in the admission of the statement during Blue's testimony that Blue's ex-wife caught Bragg kissing the victim on the lips was harmless beyond a reasonable doubt. Accordingly, Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

{¶ 17} Bragg also contends he was prejudiced by counsel's failure to object to Blue's testimony that Blue was "told that my daughter has been sexually assaulted by Dan Bragg."

{¶ 18} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the recognized exceptions. Evid.R. 802; *State v. Steffen* (1987), 31 Ohio St.3d 111, 119, 31 Ohio B. 273, 509 N.E.2d 383.

{¶ 19} "The hearsay rule . . . is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events, which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements-the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine-are generally absent for things said out of court." *Williamson v. United States*, 512 U.S. 594, 598, 114 S.Ct. 2431, 2434, 129 L.Ed.2d 476(1994).

{¶ 20} It is unclear whether Blue was referring to his ex-wife or the victim as the person who told him Bragg had sexually assaulted the victim. See, 1T. at 110.

{¶ 21} In the case at bar, the victim testified in detail that Bragg sexually abused her. As she testified and was subject to cross-examination, the jury was able to determine her credibility first-hand. Any error in admitting testimony that the victim told Blue or his ex-wife that Bragg sexually abused her is harmless beyond a reasonable doubt because the jury heard the victim accuse Bragg of

sexually abusing her during her testimony at trial. Bragg was able to confront and cross-examine the victim concerning her accusations and whether she told Blue or his ex-wife that Bragg had sexually abused her. "Corroboration of victim testimony in rape cases is not required." See *State v. Sklenar* (1991), 71 Ohio App.3d 444, 447, 594 N.E.2d 88; *State v. Banks* (1991), 71 Ohio App.3d 214, 220, 593 N.E.2d 346; *State v. Lewis* (1990), 70 Ohio App.3d 624, 638, 591 N.E.2d 854, 8 Anderson's Ohio App. Cas. 185; *State v. Gingell* (1982), 7 Ohio App.3d 364, 365, 7 OBR 464, 455 N.E.2d 1066." *State v. Johnson*, 112 Ohio St. 3d 210, 217, 2006-Ohio-6404 at ¶ 53, 858 N.E.2d 1144, 1158.

{¶ 22} Accordingly, we find that Blue's testimony did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

*State v. Bragg*, 2017-Ohio-5726.

In reaching this decision, the Fifth District applied the federal standard for ineffective assistance of counsel announced in *Strickland v. Washington*, 466 U.S. 668 (1984), which generally requires a defendant to show deficient performance by his attorney and resulting prejudice. *State v. Bragg*, 2017-Ohio-5726, at ¶¶ 10-13, citing *Harrington v. Richter,* 562 U.S. 86 (2011); *Knowles v. Mirzayance,* 556 U.S. 111 (2009); *Lockhart v. Fretwell,* 506 U.S. 364 (1993); *Strickland*, 466 U.S. 668; *State v. Bradley*, 42 Ohio St. 3d 136 (1989) (the Ohio Supreme Court's adoption of the *Strickland* standard).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision s contrary to, or involved an objectively unreasonable application of, clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington, supra*; *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

While acknowledging that these two pieces of Blue's testimony were hearsay and thus could have been objected to, the Fifth District found no prejudice because the victim herself testified so extensively to the sexual abuse and Bragg admitted kissing her. The Fifth District's decision is an objectively reasonable application of the prejudice prong of *Strickland* and is therefore entitled to deference from this Court.

The First Ground for Relief should therefore be dismissed.

**Ground Two: Ineffective Assistance of Counsel: Failure to Object to Expert Testimony Beyond the Scope of Expertise**

In his Second Ground for Relief, Bragg claims he received ineffective assistance of trial counsel when his attorney did not object to witness Kelly Morrison's testimony beyond the scope of her expertise. This was Bragg's Third Assignment of Error on direct appeal and the Fifth District decided it as follows:

> **3. Testimony of expert witness**.
>
> {¶ 28} Bragg argues that the testimony of nurse practitioner Kelly Morrison concerning epilepsy and autism exceeded the scope of her expertise as a pediatric nurse practitioner and Bragg's trial counsel should have moved to exclude such testimony as a violation of Evid.R. 702(B) and Evid.R. 403, as it was unfairly prejudicial. Specifically, Bragg contends that there was no foundation that the witness was qualified through knowledge, skill, experience, training, or education, to discuss the effects of epilepsy on an individuals' short-term and long-term memory. There was no testimony that she was similarly qualified to discuss the effects of autism on a child's ability to communicate.
>
> {¶ 29} Evid.R. 702, which governs the admissibility of expert testimony, states: "A witness may testify as an expert if all of the following apply: (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or

6

> dispels a misconception common among lay persons; (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony; (C) The witness' testimony is based on reliable scientific, technical, or other specialized information." Evid.R. 702. The proponent of the testimony bears the burden of establishing the witness's qualification.
>
> {¶ 30} The testimony that Bragg cites as error concern the effects epilepsy can have on the brain and how the victim's developmental delays and autism affected her ability to communicate. Bragg argues that this testimony provided an explanation to the jury as to why the victim did not discuss the allegations that account for four of the counts in the indictment. [Appellant's Brief at 14].
>
> {¶ 31} The victim's father had testified that the victim had epilepsy and had undergone testing for autism. (1T. at 103-105). He further testified, "She has problems with motor skills, memory lapse. She also has the — not an ability to put a timeline together." (1T. at 104). Further, Blue testified that his daughter has been in behavioral therapy for a year "and they were unable to connect with her, and they had noticed tendencies that were coming out as being autistic." (1T. at 104). Further, the victim attends a behavioral and special needs school. (1T. at 105).
>
> {¶ 32} Having reviewed the record, however, we conclude that the testimony of Ms. Morrison concerned an explanation for the developmental delays experienced by the victim and how those delays presented themselves during her examination of the victim. The testimony was not beyond the witness's specialized knowledge, skill, experience, training, or education and was not offered for an improper purpose. Further, because the victim testified at trial the jury was able to assess her ability to recall events and communicate those events and how her developmental delays presented themselves during her testimony.
>
> {¶ 33} Accordingly, we find that the testimony of Ms. Morrison did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel''s ineffectiveness in failing to object to this testimony.

*State v. Bragg*, 2017-Ohio-5726. Thus the Fifth District applied the same federal standard applied

to the hearsay question and found that Nurse Morrison's testimony did not prejudice Bragg, given

7

testimony by the victim's father about her developmental difficulties and the victim's own testimony. Again, the Magistrate Judge concludes this is not an objectively unreasonable application of *Strickland*. It is first of all unclear that an objection to the scope of Nurse Morrison's testimony would have been successful since, as a pediatric nurse practitioner, she would have had experience with developmental difficulties in children. But the Fifth District was also reasonable in finding that there was no prejudice, given the father's testimony and the ability of the jury to assess the victim's credibility. Ultimately, Bragg was acquitted on four of the five counts of the indictment which was likely affected by the victim's developmental difficulties.

Ground Two should therefore be dismissed.

**Ground Three: Ineffective Assistance of Trial Counsel: Failure to Object to Leading Questions**

In his Third Ground for Relief, Petitioner claims he received ineffective assistance of trial counsel when his attorney failed to object to leading questions. This was Bragg's Second Assignment of Error on direct appeal and the Fifth District decided it as follows:

> **2. Leading questions**.
>
> {¶ 23} Bragg next argues that he was denied ineffective assistance of counsel for trial counsel's failure to object to leading questions posed to Joseph Blue and the victim.
>
> {¶ 24} Evidence Rule 611(C) provides that "[l]eading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony." This rule places the decision whether to allow leading questions on direct examination within the trial court's discretion. *See* Staff Note, Evid.R. 611(C); *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 1993-Ohio-170, 616 N.E.2d 909, 914(1993). For that reason, the Ohio Supreme Court has held that the failure to object to leading questions does not

8

constitute ineffective assistance of counsel. *State v. Jackson*, 92 Ohio St.3d 436, 449, 2001-Ohio-1266, 751 N.E.2d 946.  Further, courts have recognized that due to a trial court's broad discretion to allow leading questions, the decision to not object to leading questions is a trial strategy.  "Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel." *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643; *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189(1980).

{¶ 25} Upon review of the questions cited by Bragg, the questions, many of which though leading, were mainly used to develop the testimony or were inconsequential and trial counsel might well have not wanted to interrupt the proceedings.  (1T. at 104, 108, 112, 116, 135, 136, 138).

{¶ 26} Bragg relies on *State v. Poling*, 11th Dist. Portage No. 2004-P-0044, 2006-Ohio-1008, wherein a conviction was reversed based on prosecutorial misconduct, including the use of leading questions. In *Poling*, however, the use of leading questions was pervasive and egregious. The appellate court observed that 11 witnesses were presented, leading questions—often supplying testimony—were asked of eight witnesses, and the leading questions were not buttressed by information elicited in the normal manner. "These questions, with their answers, often formed a substantial part of the witness' performance. The prosecution would persist in leading, following objections (often sustained) by the trial court. The prosecution did this with mature, experienced witnesses, such as [a detective]. It did this with its own investigator . . . . It did this the [the victim's mother], providing her with an answer following a sustained objection. . . . . The prosecution relied so heavily on leading its witnesses, and supplying them with answers, that we cannot see how appellant's conviction could otherwise have been obtained." *Id.* at ¶ 27, 29.  The isolated instances of leading questions asked by the prosecutor at Bragg's trial were not analogous to *Poling*.  Having reviewed the record, however, we conclude that the prosecutor resorted to leading questions to move the trial along, not to influence his witnesses' testimony or to supply them with answers. *See, State v. Ross*, 2nd Dist. Montgomery No. 22958, 2010-Ohio-843, ¶ 109.

{¶ 27} Furthermore, based on the overwhelming evidence of Bragg's guilt, we cannot say that the outcome of Bragg's trial would have been different had defense counsel objected. *See, State v. Richardson*, 8th Dist. Cuyahoga No. 91864, 2009-Ohio-4867, ¶ 29. Accordingly, we find that the prosecutor's use of leading questions

> did not rise to a level that adversely affected Bragg's substantial rights and did not deprive him of a fair trial. Bragg is unable to demonstrate he was prejudiced by counsel's ineffectiveness in failing to object to this testimony.

*State v. Bragg*, , 2017-Ohio-5726.

While the Fifth District's express conclusion is that Bragg was not prejudiced by his counsel's failure to object to leading questions, it also found that it would have been appropriate strategy not to object and that objections might not have been sustained, thus finding trial counsel's performance was also not deficient. Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984).

The Fifth District's decision is thus an objectively reasonable application of both the deficient performance and prejudice prongs of Strickland. It is therefore entitled to deference and the Third Ground for Relief should be dismissed.

**Ground Four: Cumulative Error**

In his Fourth Ground for Relief, Bragg claims the cumulative effect of his trial counsel's errors deprived him of a fair trial. In his Supporting Facts he also adverts to the cumulative effect of trial court error.

Bragg's Fourth Assignment of Error on direct appeal alleged only cumulative trial court error, not cumulative ineffective assistance of trial counsel. The Fifth District decided that since

they had found no error at all, there was no error to cumulate. *State v. Bragg, supra,* at ¶¶ 36-40. Bragg's Petition does not plead any errors which could be accumulated.

Moreover, Ground Four does not state a claim under the Constitution upon which relief can be granted.

> However, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

*Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson*, 134 S. Ct. 110 (2013). *See also Ahmed v. Houk*, No. 2:07-cv-658, 2014 U.S. Dist. LEXIS 81971, *332 (S.D. Ohio Jun. 16, 2014) (Merz, Mag. J.).

In *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002), the court held:

> The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief. Thus, it cannot be said that the judgment of the Ohio courts is contrary to *Berger*, or to any other Supreme Court decision so as to warrant relief under the AEDPA. *Cf. Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983) (pre-AEDPA case; holding that "errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair").

*Id.* at 447. Cumulative error is not a basis for granting habeas relief in non-capital cases. *Eskridge v. Konteh*, 88 F. App'x 831, 836 (6th Cir. 2004).

Therefore Ground Four should be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends that the

Petition herein be dismissed. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 29, 2018.

s/ **Michael R. Merz**
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. . Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).